UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAMES ALEXANDER LOGAN,

                Plaintiff,

vs.                        Case No.  2:02-cv-285-FtM-29DNF

SGT. JAMES LICATA, C.O. SERGIO
BERTIZZI, OFFICER WHEELER, C.O.
SAVAGE,

                Defendants.
_____

## OPINION AND ORDER

This matter comes before the Court upon review of Defendants Licata and Bertizzi's Motion to Dismiss, filed February 8, 2006. (Doc. #38.) The Court construed Defendants' Motion to Dismiss as a Motion for Summary Judgment because Defendants' included exhibits, such as affidavits and medical records, with their Motion. (Doc. #42.) Additionally, the Court reviews Defendants' supplemental brief, which provides further analysis into the Defendants' exhaustion claim. (See Order at Doc. #43 and Doc. #49.) The Court directed Plaintiff to file a response to Defendants' Motion for Summary Judgment; however, Plaintiff has failed to do so. (See Docs. #23, #39, #42.) This matter is now ripe for review.

**I.**

*Pro se* Plaintiff filed a civil rights Complaint pursuant to 42 U.S.C. § 1983 while incarcerated at Charlotte Correctional Institute.[1]  Subsequently, Plaintiff filed an Amended Complaint, naming four Defendants in their individual capacities: Licata, Bertizzi, Wheeler, and Savage.  (Doc. #16.)  The U.S. Marshal effectuated service on Defendants Licata and Bertizzi, but has not been able to effectuate service of process on Defendants Wheeler and Savage.  On August 4, 2006, the Court redirected service of process as to Defendants Wheeler and Savage.  Requests for Waiver of Service were mailed on August 8, 2006, to the defendants' last known addresses, which the Florida Department of Corrections provided to the Court *in camera*.

Plaintiff's allegations, as set forth in his Amended Complaint, are as follows: On February 9, 2001, Plaintiff was housed in a Medical/Mental Health Unit at Charlotte Correctional Institute.  (Doc. #16 at 12.)[2]  Between 9:35 and 9:45 a.m. Correctional Officer Caballero told Plaintiff that he had a medical appointment and he was to escort Plaintiff to the "General Medical Outpatient Care".  Caballero handcuffed and shackled Plaintiff, and

---

[1]Plaintiff is currently incarcerated at the Florida State Prison.

[2]Because Plaintiff attaches additional pages to the Amended Complaint, the page number cited in this Order refers to the scanned page number, not the number on the Complaint form.

took him to the Medical Department.  Once Plaintiff arrived in the Medical Department, an unidentified staff member told Plaintiff that he not needed there.  (Id.)  Caballero escorted Plaintiff back to his cell, removed the shackles, and removed the handcuff on Plaintiff's left wrist.  (Id. at 13.)  The handcuffs remained on Plaintiff's right wrist.  Plaintiff placed his right hand on the food slot, so an officer could remove the handcuff.  At this time, Plaintiff states that he "declared a psychological emergency." Officer Caballero told another officer, Officer Brown, that Plaintiff declared a psychological emergency.  Officer Brown contacted the jail's psychologist and both officers left.  (Id.)

After Officers Caballero and Brown left, Plaintiff avers that Defendant Savage approached Plaintiff's cell and told Plaintiff, using profanity and a racially discriminatory term, to move his hand from the food slot.  (Id. at 13.)  Plaintiff states that he told Defendant Savage that he was violating "the department's policy."  (Id. at 14.)  Defendant Savage used the cuffs to injure Plaintiff's hand.  Plaintiff then spoke to Nurse Lason who contacted the medical staff to inform them of the incident. Officer Caballero then escorted Plaintiff back to the medical department where Nurse Jake examined Plaintiff's bruised hand and checked Plaintiff's medical records to determine whether Plaintiff had incurred a previous injury to the hand.  (Id. at 15.) Plaintiff avers that Nurse Jake stated that the records reflected that nothing had previously happened to Plaintiff's hand.

-3-

Plaintiff states that supervisor Reid also examined Plaintiff's bruised and swollen hand and later wrote an incident report.

Upon walking back to his cell with Caballero, Plaintiff states that he saw Defendants Savage, Wheeler, Bertizzi, and Licata "privately conversing" together in front of "Plaintiff's dormitory." (Id. at 15.)  Plaintiff states that Defendants took Plaintiff from Officer Caballero before he was returned to his cell and Defendants brought him to a single cell, in a suicide cell. (Id. at 16.)  Plaintiff states that when Defendants took him from Caballero, Plaintiff asked the Defendants why they were moving him. Plaintiff alleges that Defendants answered, "You'll see."  Upon arriving at the single cell, Plaintiff, who remained handcuffed and shackled, alleges that Defendant Savage hit Plaintiff in the face with handcuffs, which caused Plaintiff's nose to bleed. Simultaneously, Defendants Wheeler, Licata, and Bertizzi rushed Plaintiff, attacked him, and pushed him to the floor.  (Id. at 16-17.)  Plaintiff states that he was helpless on the floor and did not resist while the Defendants punched and kicked Plaintiff until he was near unconscious.  Defendants left Plaintiff on the floor and did not bring him to the jail's medical facility "for what seemed to be half an hour."  (Id. at 18.)  Plaintiff avers that he incurred injuries, including a fractured skull and face, because of the attack.  (Id. at 17.)

Plaintiff states that x-rays were taken and he was treated for the injuries at various medical facilities, including a public

hospital in Orlando, Lake Butler Reception Center, and a public hospital in Jacksonville. (Id. at 17-18.)  The treatment involved two surgeries. (Id. at 17.)  Plaintiff further alleges that he had many prior altercations with Defendants and that when Plaintiff reported the prior abuses to jail supervisors, Defendants threatened him. (Id. at 18.)  Plaintiff avers that the attack, which is the subject of the Complaint *sub judice*, occurred as a direct result of Plaintiff going to the jail's medical unit earlier that day to report the prior injury to Plaintiff's hand caused by Defendant Savage.

For relief, Plaintiff requests that the Court do the following: (1) issue a declaratory judgment stating that Defendants violated Plaintiff's Eighth Amendment rights and that Defendants' actions constituted an assault and battery under state law; (2) issue an injunction ordering Defendants to pay for the installation of video cameras in all confinement areas, special management units, medical units, or closed areas of confinement; (3) order Defendants to cover the costs of Plaintiff's medical needs as a result of the attack, including cosmetic and reconstructive surgery on Plaintiff's face; (4) $100,000 in damages against each Defendant for Plaintiff's physical and emotional injuries; (5) $150,000 in damages against each Defendant for Plaintiff's physical injuries; and (6) state and federal criminal incitements against each Defendant. (Id. at 20-21.)

-5-

**II.**

On February 8, 2006, Defendants Licata and Bertizzi filed a Motion for Summary Judgment, attaching as exhibits copied portions of Plaintiff's medical records and affidavits from Nurse Lason, Captain Reid, inmate Morgan, and Officer Lytle. In the Motion, Defendants raise the following grounds: (1) Plaintiff failed to exhaust his administrative remedies; (2) Plaintiff fails to state a cause of action against the Defendants in their individual capacity; (3) Defendants are entitled to Eleventh Amendment immunity; and (4) Defendants are entitled to sovereign immunity.

**A.**

Defendants Eleventh Amendment immunity and/or sovereign immunity claims are inapplicable since the Complaint expressly states that Plaintiff is suing Defendants only in their individual capacities. Eleventh Amendment immunity, which is also known as sovereign immunity, does not apply in suits brought against Defendants in their individual capacities. McMillian v. Monroe County, 520 U.S. 781, 785 (1997); Gangloff v. Poccia, 888 F. Supp. 1549 (M.D. Fla. 1995).

**B.**

With regard to the exhaustion claim, Defendants call attention to the fact that Plaintiff filed previous § 1983 Complaints with this Court regarding the same February 9, 2002 incident, which were

dismissed by this Court due to Plaintiff's failure to exhaust.[3] Here, Defendants argue that Plaintiff did not properly exhaust his administrative remedies since he did not exhaust in a timely manner. (Doc. #49-1 at 2, 6.)  Defendants argue that Plaintiff waited four months to file his first "informal grievance" dated June 21, 2001. (Id. at 6.)  Additionally, Defendants argue that before proceeding with this action, Plaintiff waited nine months before filing his grievance and stated that his reason for filing the grievance was to go to the federal court. (Id.)  The Court disagrees with Defendants' failure to exhaust claim argument and finds that Plaintiff has fully exhausted his available administrative remedies.

The Florida Administrative Code Chapter 33-103, requires Plaintiff to exhaust all available administrative remedies before pursuing a civil rights action. Specifically, the Florida Department of Corrections provides a three-step grievance procedure. First, an inmate must normally file either an informal grievance or formal grievance depending on the nature of his complaint. See Fla. Admin. Code 33-103.006-.007. If the inmate's issue is not resolved at the institutional level, the inmate must file an appeal to the Office of the Secretary of the

---

[3]Case No. 2:01-cv-588 filed on November 9, 2001, was dismissed as premature because Plaintiff was awaiting a response from the Secretary of the Department of Corrections. Case No. 2:02-cv-66 filed on February 20, 2002, was also dismissed because Plaintiff did not provide any information regarding the outcome of the investigation by the Inspector General's Office.

Florida   Department   of   Corrections.   Id.   at   33-103.007.
Additionally, an inmate may bypass the filing of an informal and
formal grievances and file emergency grievances, grievances of
reprisal, and grievances of a sensitive nature directly with the
Office of the Secretary.[4]  Id. at 33-103.007(6).

Upon reviewing the series of grievances attached to the three
Complaints regarding the February 9, 2001 incident, filed by
Plaintiff, the Court finds that the first documented grievance
filed by Plaintiff was an emergency grievance dated June 21, 2001,
not an informal grievance as Defendants assert.  In the Emergency
Grievance, accompanying Plaintiff's first Complaint, Plaintiff
states he filed grievances beforehand, but received no response.
Although the incident occurred four months before the June
grievance, Plaintiff avers that he previously filed informal
grievances that went unanswered.  Moreover, the jail did not deny
the emergency grievance as untimely, rather the response dated July
9, 2001, states that the grievance was forwarded to the Office of
the Inspector General for review and action, if necessary.[5]  (Doc.
#49-2 at 16.)

Upon review of the grievances, it appears that after the Court
dismissed Plaintiff's first Complaint, Plaintiff filed additional

_____

[4]Defendants did not mention the emergency bypass procedure in
their brief regarding exhaustion.

[5]The Court dismissed Plaintiff's first Complaint in Case No.
2:01-cv-588 for Plaintiff's failure to include the Inspector
General's response.

-8-

grievances, including an informal grievance dated November 28, 2001 to the warden describing the February 9 incident and stating that his civil rights Complaint was dismissed by the Court for failure to exhaust. (Doc. # 49-4 at 1.)  The response acknowledges that Plaintiff filed previous grievances, as it states "these allegations have already been referred to the IG's office." (Id.) Thereafter, Plaintiff filed a formal grievance dated December 2, 2001 to the superintendent and an appeal dated December 9, 2001 to the Secretary of the Department of Corrections.  The Secretary of the Department of Corrections denied Plaintiff's administrative appeal, stating that the response received at the institutional level and the Central Office level were deemed appropriate. (Doc. #49-6 at 1.)  None of Plaintiff's grievances were denied as untimely.[6]  In fact, it appears that part of Plaintiff's delay occurred while waiting for a response from the Investigator General's office.  Consequently, the Court finds that Plaintiff has fully exhausted his available administrative remedies and will address the merits of Plaintiff's claim.  Boxer v. Harris, 437 F.3d 1107 (11th Cir. 2006).

## III.

---

[6]A grievance dated July 30, 2001, submitted in Case No. 2:01-cv-588, addressed to the warden was returned to Plaintiff because he did not file the formal grievance within fifteen days of the date of the incident.  However, this grievance does not address the issue raised in the Complaint, rather the subject matter concerns a disciplinary hearing.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(c).  An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the suit under governing law.  <u>Id.</u>

The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Rice-Lamar v. City of Ft. Lauderdale</u>, 232 F.3d 836, 840 (11th Cir. 2000), <u>cert. denied</u>, 534 U.S. 815 (2001).  In order to avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial motion.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 322; <u>Hilburn v. Murata Elecs. N. Am., Inc.</u>, 181 F.3d 1220, 1225 (11th Cir. 1999).

In ruling on a motion for summary judgment, the Court is required to consider the evidence in the light most favorable to

the nonmoving party.  <u>Johnson v. Booker T. Washington Broadcasting</u> <u>Servs., Inc.</u>, 234 F.3d 501, 507 (11th Cir. 2000); <u>Jaques v.</u> <u>Kendrick</u>, 43 F.3d 628, 630 (11th Cir. 1995).  The Court does not weigh conflicting evidence or make credibility determinations. <u>Hilburn</u>, 181 F.3d at 1225.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  <u>Tullius v. Albright</u>, 240 F.3d 1317, 1320 (11th Cir. 2001)(citing <u>Clemons v. Dougherty County</u>, 684 F.2d 1365, 1369 (11th Cir. 1982)).  However, "the mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is material to an issue affecting the outcome of the case."  <u>McCormick</u> <u>v. City of Fort Lauderdale</u>, 333 F.3d 1234, 1243 (11th Cir. 2003). A genuine issue of material fact exists only if there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.  <u>Id.</u>  In the summary judgment context, the Court must construe *pro se* pleadings more liberally than those of a party represented by an attorney.  <u>Loren v. Sasser</u>, 309 F.3d 1296, 1301 (11th Cir. 2002).

**IV.**

Title 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws."  To state a claim under 42 U.S.C. § 1983, Plaintiff must allege: (1) Defendants deprived him of a right secured under the United States

Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001).

In addition, Plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. Marsh, 268 F.3d at 1059; Swint v. City of Wadley, 51 F.3d 988 (11th Cir. 1995); Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994). A defendant who occupies a supervisory position may not be held liable under a theory of respondeat superior in a § 1983 action. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-692 (1978); Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir. 2003); Farrow v. West, 320 F.3d 1235 (11th Cir. 2003). Liberally construing Plaintiff's Amended Complaint, Plaintiff claims a First Amendment claim involving the alleged retaliation by Defendants and Eighth Amendment claims for Defendants' excessive use of force and medical indifference.

**A.**

"First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment." Boxer, 437 F.3d 1107 (11th Cir. 2006) (citing Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989). An

essential element of a First Amendment retaliation claim is the existence of a retaliatory motive. See Gattis v. Brice, 136 F.3d 724, 726 (11th Cir. 1998) (explaining that a plaintiff must show that his speech was a 'substantial' or 'motivating' factor in the alleged retaliatory action)). Further, Plaintiff must be able to demonstrate a "causal connection" between the adverse action taken against Plaintiff and the exercise of Plaintiff's free speech rights. Farrow v. West, 320 F.3d 1235, 1240 (11th Cir. 2003); See also Osterback v. Kemp 300 F.Supp. 2d 1238 (N.D. Fla. 2003) (holding that there was not a First Amendment claim for retaliation when the prisoner was transferred to another jail for a legitimate penological interest, not in retaliation). Plaintiff must do more than make "general attacks" upon a defendant's motivations and must articulate "affirmative evidence" of retaliation to prove the requisite motive. Crawford-El v. Britton, 523 U.S. 574, 600 (1998).

To establish an Eighth Amendment claim for excessive use of force, the initial inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Id. at 6 (quoting Johnson v. Glick, 481 F.2d 1028, 1033, cert. denied John v. Johnson, 414 U.S. 1033 (1973). However, in order to state a claim for a violation under the Eighth Amendment for medical indifference, Plaintiff must show that public officials acted with deliberate indifference to Plaintiff's serious medical needs.

Estelle V. Gamble, 429 U.S. 97 (1976); Farrow v. West, 320 F.3d 1235 (11th Cir. 2003).  Thus, a plaintiff first must show that he had an "objectively serious medical need"  Id. (citing Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000); and, second that the official acted with an attitude of "deliberate indifference" toward rendering treatment to the serious medical need.  Farrow, 320 F.3d 1235 (quoting Farmer v. Brennan, 511 U.S. 825 (1994).  Deliberate indifference is a state of mind more egregious and culpable than mere negligence.  Estelle, 429 U.S. at 104-106.   In fact, even gross negligence does not satisfy the "sufficiently culpable state of mind" standard.  Miller v. King, 384 F.3d 1248, 1261 (11th Cir. 2004).   An inmate who complains that delay in medical treatment rises to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay.  Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176 (11th Cir. 1994).  Further, the tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay.  Id; Harris v. Coweta County, 21 F.3d 388, 393-94 (11th Cir. 1994).

**B.**

With respect to Plaintiff's retaliation claim, the record establishes that the morning of the attack, Plaintiff went to the medical department complaining of a hand injury caused by Defendant Savage.  The nurse and Supervisor Reid examined Plaintiff's hand

and Reid filed an investigation report.  Later on that same day,
Plaintiff claims that Defendants, including Defendant Savage, were
talking amongst themselves, took Plaintiff to an isolated area, and
then attacked him.  On previous occasions, Plaintiff further avers
that Defendant Savage threatened Plaintiff for complaining about
him to jail authorities.  The Court finds that these facts are
sufficient to state a retaliation claim under § 1983.
Additionally, the undisputed material facts are not sufficient to
find that plaintiff cannot establish a retaliation claim under the
summary judgment standard summarized above.

There are two alleged injuries in this case: the first injury
to Plaintiff's hand when Defendant Savage allegedly hit Plaintiff's
hand with handcuffs and the second when the group of Defendants
attacked Plaintiff in an isolated cell.  Plaintiff avers that he
incurred injuries as a result of both attacks– a swollen hand from
the first incident and a fractured skull from the second incident.
While it is clear Plaintiff incurred injuries, facts are in dispute
as to what caused Plaintiff's injuries.

Defendants exhibits, including an Emergency room Record dated
February 9, 2001 (Doc. #38-2 at 3) and an Affidavit from Nurse
Lason dated February 16, 2001 indicate that Plaintiff's right hand
was swollen (Doc. # 38-2 at 1).  However, an Affidavit from Officer
Reid dated February 15, 2001, indicated that Reid "did not observe
any noticeable injuries to [Plaintiff]."  This part of Reid's
affidavit is inconsistent with Nurse Lason's affidavit and the

medical records attached to Defendants' Motion.  Further, Reid states that once Plaintiff arrived in the medical department, Plaintiff "would not cooperate with nursing staff and would not make any comment in regard to what happened." (Doc. #38-2 at 2.) As for how Plaintiff's hand became injured, Defendants do not concede that the injury occurred because of Defendant Savage's actions; rather, Defendants attach an Affidavit from inmate Morgan dated February 16, 2001, stating that Plaintiff "made up the story of Officer Savage and his handcuffs." (Doc. #38-2 at 4.)

With regard to the head injury, it is clear that Defendant obtained a head injury; however, how the head injury occurred is not clear.  Defendants argue that Plaintiff's injury was caused by another inmate who allegedly hit Plaintiff over the head with a food tray on January 18, 2001, approximately three weeks prior to the alleged incident subject to this Complaint.  (Doc. #38-1 at 7.) Defendants argue that Plaintiff received medical treatment for this head injury on January 18, January 19, February 2, and February 5, 2001.  (Id.)  Defendants attach as an exhibit the "Florida Department of Corrections Chronological Record of Health Care" form includes medical entries of Plaintiff's condition from December 13, 2000 through February 2, 2001.[7]  These records indicate that Plaintiff went to the medical department on January 18, 2001

---

[7]It is interesting that the dates included on these medical records end on February 2, just a few days before the alleged attack occurred on February 9.

because of an injury caused when Plaintiff was hit with a food tray. (Doc. #38-2 at 6, 8.)  An affidavit from Officer Lytle dated February 16, 2001, indicates that Plaintiff had a cat-scan, approximately a week after the alleged attack on February 16, 2001 at Fawcett Hospital and during this medical visit stated that "[his] roommate hit me in the head with a food tray." (Doc. #38-2 at 5.)   It appears that Plaintiff had another medical visit outside the institution scheduled for February 22, 2001.  On the other hand, Plaintiff's attached grievances describe the incident just as it is explained in Plaintiff's Amended Complaint, that is that Officer Savage, Licata, Wheeler, and Bertizzi attacked Plaintiff in a suicide cell, while he was shackled, causing injuries to his skull and nose.  As previously stated, the record establishes that Plaintiff incurred  head injuries; however, the cause of this head injury is unclear and consequently raises a question of material fact.

With respect to Plaintiff's medical indifference claim, Plaintiff avers that Defendants punched and kicked Plaintiff until he was near unconscious and was not taken to the medical department for at least thirty minutes.  Defendants argue that there was no constitutional violation for medical treatment because "Plaintiff's own statement was that he waited for what seemed to be an entire half hour prior to being taken to medical personnel. (citations omitted).  Plaintiff further admits to being taken outside medical facilities subsequent to the alleged incident for treatment." (Doc.

-17-

338-2 at 6-7.)  Defendants argument fails to take into account that Plaintiff is incarcerated and was not free to go to the medical department on his own initiative; in fact, Plaintiff avers he was near unconscious.   There remains issues of material fact as to whether Defendants' actions constituted an Eighth Amendment violation for medical indifference, and therefore the summary judgment motion must be denied.

## V.

Last, Defendants argue that their actions are protected by qualified immunity.  (Doc. 38-1 at 6-11.)   Qualified immunity shields government officials performing discretionary functions from civil trials for money damages and prevents them from being held liable in their individual capacities insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  D'Aquanno v. Gallagher, 50 F.3d 877, 879 (11th Cir. 1995) (citations and quotations omitted).  Once the public official has established that he or she was acting within the scope of his or her discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).

In this case, it is clear that Defendants were working as correctional officers at Charlotte Correctional Institute; thus, Defendants were performing discretionary functions.

> The Supreme Court has set forth a two-part
> test for the qualified immunity analysis.
> "The threshold inquiry a court must undertake
> in a qualified immunity analysis is whether
> [the] plaintiff's allegations, if true,
> establish a constitutional violation." <u>Hope v.
> Pelzer</u>, 536 U.S. 730 (2002) (citing <u>Saucier v.
> Katz</u>, 533 U.S. 194 (2001)). If a
> constitutional right would have been violated
> under the plaintiff's version of the facts,
> "the next, sequential step is to ask whether
> the right is clearly established." <u>Saucier</u>,
> 533 U.S. at 201; <u>See also</u> <u>Lee</u>, 284 F.3d at
> 1194.

<u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1346-47 (11th Cir. 2002).

Construing the Complaint liberally, and viewing any disputed facts in favor of plaintiff, the Court finds that Defendants are not entitled to qualified immunity.  Based upon Plaintiff's factually specific allegations and the record, the Court concludes that there remain material issues of fact that preclude granting Defendants Licata and Bertuzzi's Motion for Summary Judgment.

ACCORDINGLY, it is hereby

**ORDERED**:

1.   Defendants Licata and Bertizzi's Motion to Dismiss, construed as a Motion for Summary Judgment (Doc. #38), is **DENIED**.

2.   Defendants shall file an Answer to Plaintiff's Complaint within twenty (20) days of the date on this Order.

**DONE AND ORDERED** in Fort Myers, Florida, on this __31st__ day of August, 2006.

<u>John E. Steele</u>
JOHN E. STEELE
United States District Judge

-19-

SA:   alj
Copies: All Parties of Record